UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GREGG BIGDA,<br><br>  Plaintiff,<br><br>  v.<br><br>CITY OF SPRINGFIELD, et al.,<br><br>  Defendants. | Civil Action No. 23-30067-MGM |

MEMORANDUM AND ORDER REGARDING CROSS
MOTIONS TO DISMISS AND
PLAINTIFF'S MOTION FOR SANCTIONS
(Dkt. Nos. 19, 21, and 23)

April 29, 2024

MASTROIANNI, U.S.D.J.

## I. INTRODUCTION

This civil action arises from the aftermath of Plaintiff Gregg Bigda's ("Plaintiff") December 13, 2021 acquittal on federal criminal charges. As a result of this jury verdict, Plaintiff contends he was entitled to immediate reinstatement as an officer in the Springfield Police Department (the "Department"). He further argues this reinstatement must be without restriction, whether in the form of limitations on his authority to carry a firearm or badge, his ability to obtain an assignment outside of the stationhouse, or his potential to work overtime details. According to Plaintiff, Defendants — the City of Springfield, Mayor Domenic J. Sarno, and Police Superintendent Cheryl Clapprood (collectively, "Defendants") — conspired, and continue to conspire, to keep him from serving as a Springfield police officer without restriction.

In response to this asserted conspiracy, Plaintiff filed this lawsuit alleging deprivation of the rights to substantive and procedural due process as secured by the 14th Amendment to the United

States Constitution in violation of 42 U.S.C. § 1983 (Count I), deprivation of the right to equal protection of the laws as secured by the 14th Amendment in violation of 42 U.S.C. § 1983 (Count II), violation of the Massachusetts Civil Rights Act as to Defendants Sarno and Clapprood (Count III), tortious interference with advantageous business relations as to Defendants Sarno and Clapprood (Count IV), civil conspiracy (Count V), intentional infliction of emotional distress (Count VI), defamation as to Defendant Clapprood (Count VII), and violation of Mass. Gen. L. ch. 268A § 25 as to Defendant City of Springfield (Count VIII).[1] Defendants answered, bringing counterclaims sounding in Massachusetts law seeking contribution pursuant to Mass. Gen. L. ch. 231B, § 1(a) (Counterclaim I), and alleging Plaintiff breached a fiduciary duty to the City of Springfield (Counterclaim II).

The parties filed cross-motions for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting the complaint and counterclaims, respectively, failed to state a claim upon which relief may be granted. Before the court can address the merits of the pending motions, it must determine it has jurisdiction to hear this case pursuant to Article III of the federal constitution. As the court concludes Plaintiff's federal constitutional claims—Counts I and II—are not ripe for adjudication, this court lacks subject matter jurisdiction to hear Plaintiff's federal claims. Consequently, Counts I and II are dismissed without prejudice. In addition, the court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims rendering Counts III-VIII dismissed. As no operative complaint remains in this matter, Defendants' remaining counterclaim is

---

[1] Plaintiff voluntarily dismissed Counts V and VI against the City of Springfield, Mayor Sarno in his official capacity, and Superintendent Clapprood in her official capacity. (Dkt. No. 18.)

also dismissed,[2] as is Plaintiff's pending motion for sanctions.[3]

## II. FACTUAL BACKGROUND

Plaintiff joined the Springfield Police Department in 1994. From 1994 until October 2018, he served as an active-duty officer with the Department. On or about October 31, 2018, he was suspended without pay by the Department because of an indictment returned by a federal grand jury sitting in the District of Massachusetts. Specifically, the indictment alleged Plaintiff deprived several juveniles of rights secured by the federal constitution while acting under color of law in violation of 18 U.S.C. § 242. It further alleged Plaintiff made false reports in violation of 18 U.S.C. § 1519 to cover up the initial offense. These charges stemmed from an incident in Palmer, Massachusetts wherein several juveniles stole a Springfield police vehicle. The juveniles led police on a chase that ended in their apprehension. During the arrest, it was alleged that Plaintiff used an unconstitutional degree of force against the juveniles. After the arrest, the juveniles were transported to the Palmer police station, where they were subsequently interrogated by Springfield police officers, including Plaintiff. This interrogation was recorded and subsequently became publicly available. Upon reviewing the recording, officials with the United States Attorney's Office for the District of Massachusetts determined the conduct depicted "shocked the conscience" in violation of the 14th Amendment thereby further

---

[2] Defendants voluntarily dismissed Counterclaim I on September 15, 2023. (Dkt. No. 14.)

[3] In certain circumstances, "[a] court without subject matter jurisdiction may retain some limited authority to protect its own independent interests in its procedures." *Christopher v. Stanley-Bostitch, Inc.*, 240 F.3d 95, 100 (1st Cir. 2001). On occasion, the Rule 11 sanction power fits this unique category of occurrence. "However, whatever incidental power the court retains cannot go to the merits of the underlying action." *Id.*; *see also Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999) ("Nevertheless, we believe that Article III's limits on federal jurisdiction are designed not only to prevent federal courts from assessing the merits of certain disputes, but also to prevent federal courts from interfering—through such assessments *or otherwise*—with the jurisdiction of state courts over certain cases, such as this one, that do not implicate federal interests."). Plaintiff's motion for sanctions (Dkt. No. 23) is so intertwined with the merits of Defendants' state law counterclaims that the court could not address the motion for sanctions without passing judgment on the counterclaims. Consequently, the court exercises its discretion and dismisses this motion without prejudice.

3

violating the juveniles' constitutional rights. As alluded to earlier, a grand jury agreed, returning an indictment against Plaintiff. Plaintiff elected to exercise his constitutional right to a trial by jury. At the conclusion of this trial, Plaintiff was acquitted by the jury of all charges on December 13, 2021.

According to Plaintiff, Massachusetts law required his immediate reinstatement to the Springfield Police Department following his acquittal. In line with this position, four days after the acquittal, on December 17, 2021, the City of Springfield informed Plaintiff he would return to the Department payroll but would be placed on administrative leave while still receiving his base salary. Thus, he continues to receive his base pay and he received a certain amount of backpay, but he cannot receive his badge, carry his gun, volunteer for overtime work details, receive shift assignments, or report to police facilities. As of April 29, 2024, Plaintiff remains on the Department's payroll.

In 2020, while Plaintiff's federal criminal matter was pending, the Massachusetts General Court undertook to reform the process for regulating the profession of policing in the Commonwealth of Massachusetts. The result was passage of 2020 Mass. Acts Chapter 253, which was styled: *An Act Relative to Justice, Equity and Accountability in Law Enforcement in the Commonwealth*. Among the provisions in this legislation, Chapter 6E established the Massachusetts Peace Officer Standards and Training Commission ("P.O.S.T. Commission") as an independent state agency with the responsibility for reviewing, certifying, and investigating the qualifications of all law enforcement officers serving in Massachusetts. *See* Mass. Gen. L. ch. 6E, § 2 (establishing the composition of the Commission); Mass. Gen. L. ch. 6E, § 3 (setting forth the powers of the Commission).[4] The Commission's mandate applied

---

[4] In support of this mandate, the General Court delegated the P.O.S.T. Commission substantial quasi-judicial powers. These include the right to "act as the primary civil enforcement agency for violations of this chapter"; the ability to "deny an application or limit, condition, restrict, revoke or suspend a certification, or fine a person certified for any cause that the commission deems reasonable"; the authority to "levy and collect assessments, fees and fines and impose penalties and sanctions for a violation of this chapter or any regulations promulgated by the commission"; the obligation to "conduct adjudicatory proceedings in accordance with chapter 30A"; and the power to "issue subpoenas and compel the attendance of witnesses at any place within the commonwealth, administer

retroactively. This meant individuals who became police officers before its enactment would eventually need to apply to the Commission for recertification.

On July 1, 2022, Plaintiff's certification expired, and he was required to apply to the commission for recertification. Plaintiff applied for recertification before the deadline. As part of the recertification process, Defendant Clapprood was required to provide a letter to the Commission explaining whether she believed Plaintiff possessed the requisite good character and fitness to serve as a police officer. This requirement was set forth in an administrative rule promulgated by the P.O.S.T. Commission. *See* 555 Mass. Code Regs. § 7.05. In June 2022, Defendant Clapprood certified Plaintiff did not possess the requisite character and fitness to serve as a police officer. As a result, Plaintiff was denied recertification. In a subsequent administrative review, this decision was confirmed by the Executive Director of the Commission. Plaintiff then exercised his administrative right to appeal the decision to an appointed hearing officer. On January 8, 2024, following a two- and half-day hearing, a retired Associate Justice of the Massachusetts Superior Court rendered an eighteen-page written decision upholding Plaintiff's decertification. (*See* Dkt. No. 48-2, *In the Matter of Gregg Bigda*, Case No. 23-001-C (Mass. P.O.S.T. C'mmn January 8, 2024.)) Plaintiff appealed the hearing officer's decision to the full Commission. On April 22, 2024, after receiving briefing and hearing arguments, a quorum of the P.O.S.T. Commission voted eight to zero to uphold the hearing officer's initial decision. (Dkt. No. 48-1.) Pursuant to Mass. Gen. L. ch. 30A, § 14, Plaintiff has thirty days to seek judicial review of this final agency action from the Massachusetts Superior Court. As of today, Plaintiff cannot serve as a police officer without restriction because he lacks the required certification from the Commission.

---

oaths and require testimony under oath before the commission in the course of an investigation or hearing conducted under this chapter." *See* Mass. Gen. L. ch. 6E, § 3(1), (4), (22), (24), and (26).

### III. LEGAL STANDARD

In this case, the parties filed cross-motions to dismiss relying on Fed. R. Civ. P. 12(b)(6). However, according to Fed. R. Civ. P. 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." After reviewing the initial Rule 12(b)(6) motions, the court raised the issue of subject matter jurisdiction *sua sponte* by requesting briefing on the potential application of the ripeness doctrine or the *Younger* abstention doctrine.[5] *See Bacardi Int'l Ltd. v. V. Suarez & Co.*, 719 F.3d 1, 13 (1st Cir. 2013) ("Although neither party raised the possibility of deferring the exercise of federal jurisdiction, we may do so *sua sponte*."); *see also* Wright & Miller, FED. PRAC. & PROC. § 1350 (4th ed.) (explaining the myriad ways a subject matter jurisdiction challenge may be initially raised). Although raised *sua sponte*, the court will apply the standard applicable in reviewing a Rule 12(b)(1) motion because the "rule is a large umbrella . . . [including challenges] grounded in considerations of ripeness, mootness, sovereign immunity, and the existence of federal question jurisdiction." *Valentin v. Hosp. Bella Vista,* 254 F.3d 358, 363 (1st Cir. 2001).

In reviewing a Rule 12(b)(1) motion, the court may take two approaches depending on the nature of the jurisdictional challenge. *See Valentin*, 254 F.3d at 363. When a defendant accepts the plaintiff's jurisdictionally significant facts as true, the court "take[s] as true all well-pleaded facts in the

---

[5] As the court finds the ripeness doctrine is the most efficient method for addressing its subject matter jurisdiction, it does not engage in a full analysis of the *Younger* abstention question. Nevertheless, the court would dismiss Plaintiff's third request for relief, which seeks an order reinstating Plaintiff to the Springfield Police Department, on *Younger* grounds, as such injunctive relief would constitute unwarranted federal interference in an ongoing state civil enforcement proceeding with attributes akin to a criminal proceeding. *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78-80 (2013); *see also Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 193-94 (1st Cir. 2015) (explaining when civil enforcement proceedings are covered by *Younger*). Moreover, the court would stay the entirety of Plaintiff's remaining claims because continuing the proceeding would "'needlessly inject' the federal court into ongoing state proceedings." *Coggeshall v. Mass. Bd. of Reg. of Psychologists*, 604 F.3d 658, 665 (1st Cir. 2010) (quoting *Brooks v. N.H. Supreme Court*, 80 F.3d 633, 637 (1st Cir. 1996)). The allegations in Plaintiff's complaint are completely intertwined with the sufficiency and truthfulness of the evidence relied upon by first the P.O.S.T. Commission, and then, potentially, the Massachusetts Superior Court in reviewing Plaintiff's recertification request. Orders and rulings by this court would function as a collateral attack on the legitimacy of the state process.

plaintiffs' complaints, scrutinize[s] them in the light most hospitable to the plaintiffs' theory of liability, and draw[s] all reasonable inferences therefrom in the plaintiffs' favor." *Fothergill v. United States*, 566 F.3d 248, 251 (1st Cir. 2009) (alteration added). "If the well-pleaded facts, evaluated in that generous manner, do not support a finding of federal subject-matter jurisdiction, the orders of dismissal must [issue]." *Id.* (alteration added). When a defendant "engage[s] the gears of Rule 12(b)(1) by controverting the accuracy (rather than the sufficiency) of the jurisdictional facts . . . the plaintiff's jurisdictional averments are entitled to no presumptive weight; the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties." *Valentin*, 254 F.3d at 363 (alteration added). "In conducting this inquiry, the court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction." *Id.* at 364. Here, the parties are in general agreement on the relevant jurisdictional facts. Consequently, the court relies principally on the parties' own uncontroverted pleadings as supplemented by documents from the public record when necessary to properly ascertain whether jurisdiction exists. *See, e.g., Groden v. N&D Transportation Co., Inc.,* 866 F.3d 22, 25 n. 3 (1st Cir. 2017) ("When considering motions to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the court may consider materials outside the pleadings.").

## IV. DISCUSSION

Plaintiff's two federal constitutional claims, Counts I and II, both rely on the premise that the Springfield Police Department unlawfully refused to reinstate him as a police officer without restriction. However, as Defendants note, Plaintiff has not been terminated as an employee of the Springfield Police Department, rendering his claims unfit for adjudication before this court. Accordingly, Counts I and II are dismissed for failing to present a sufficiently ripe case or controversy.

Ripeness doctrine is a natural corollary of the "foundational [constitutional] principle of Article III that 'an actual controversy must exist not only at the time the complaint is filed, but through all

stages of the litigation.'" *Trump v. New York*, 592 U.S. 125, 131 (2020) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90-91 (2013)) (alteration added). In determining ripeness, the court considers two factors, "[1] the fitness of the issues for judicial decision and [2] the hardship to the parties of withholding court consideration." *Roman Cath. Bishop of Springfield v. City of Springfield*, 724 F.3d 78, 89 (1st Cir. 2013) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)) (alteration added). When considering these factors, the court recalls "[t]he ripeness inquiry is often *sui generis*" because "[m]ost litigation has idiosyncratic features, and the various integers that enter into the ripeness equation play out quite differently from case to case, thus influencing the bottom line." *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 535-36 (1st Cir. 1995).

In *Roman Catholic Bishop of Springfield*, the First Circuit comprehensively set forth the requirements for each prong of the ripeness test. As to fitness, the First Circuit wrote:

> The fitness prong of the ripeness test has both jurisdictional and prudential components. The former, "grounded in the prohibition against advisory opinions, is one of timing." It concerns whether there is a sufficiently live case or controversy, at the time of the proceedings, to create jurisdiction in the federal courts. The prudential component asks "whether resolution of the dispute should be postponed in the name of 'judicial restraint from unnecessary decision of constitutional issues'; if elements of the case are uncertain, delay may see the dissipation of the legal dispute without need for decision.

*Roman Cath. Bishop of Springfield*, 724 F.3d at 89 (internal citations omitted). By contrast, the "hardship" prong is "wholly prudential." *Id.* at 90. Hardship analysis "looks at whether the challenged action creates a direct and immediate dilemma for the parties," recalling that the "mere possibility of future injury, unless it is the cause of some present detriment, does not constitute hardship." *Id.* (internal quotations omitted). For a claim to proceed, a plaintiff must demonstrate both prongs of the ripeness inquiry are met. *See Ernst & Young*, 45 F.3d at 535.

First, addressing the fitness prong, Plaintiff fails to satisfy either the jurisdictional or prudential subcomponents of the test. Plaintiff's core constitutional complaint is that the Defendants have

8

deprived him of a "constitutionally protected property right to continued employment as a police officer without restriction." (*See* Dkt. No. 1, ¶¶ 105, 115-16.) Assuming such a right exists, no party disputes that Plaintiff has not been fully deprived of this right. This is fatal because "[r]ipeness turns upon the existence of 'an 'actual' controversy,' which 'is a *sine qua non* of any assumption of federal jurisdiction.'" *O'Connell v. Walsh*, No. CV 15-10096-DJC, 2015 WL 9581735, at *2 (D. Mass. Dec. 30, 2015) (quoting *Verizon New England, Inc. v. Int'l Bhd. of Elec. Workers, Loc. No. 2322*, 651 F.3d 176, 188 (1st Cir. 2011)). As Plaintiff remains on the Department's payroll, his asserted constitutional deprivation is purely hypothetical until the Massachusetts state courts render a final decision on his certification application, thereby triggering either his termination or retention. Moreover, until Plaintiff is terminated, any decision or order regarding his asserted constitutional injuries would require the court to decide issues based on factual scenarios that have not yet occurred. Specifically, the court would need to conclude Plaintiff had been (or had not been) deprived of his constitutional right to serve as a police officer without restriction during a timeframe where it is undisputed Plaintiff remained in the employ of the Springfield Police Department. Thus, providing the parties with a hypothetical resolution to a hypothetical constitutional question. As a jurisdictional matter, answering this hypothetical on behalf of either Plaintiff or Defendants would not constitute a decision regarding a live case or controversy rendering it a constitutionally impermissible advisory opinion. *See Project Veritas Action Fund v. Rollins,* 982 F.3d 813, 826 (1st Cir. 2020) ("The ripeness inquiry is grounded in Article III's prohibition against advisory opinions." (internal quotation marks omitted)); *see also Eves v. LePage*, 927 F.3d 575, 590 (1st Cir. 2019) (en banc) (explaining, in the context of a different justiciability doctrine, that "Federal courts should not issue such advisory opinions.").[6] Consequently, Plaintiff's

---

[6] In responding to the court's inquiry regarding ripeness, Plaintiff directed the court to a decision from another session of this court, *Meuse v. Nat'l P.I. Servs., LLC*, No. 21-CV-11533-ADB, 2022 WL 2532831 (D. Mass. July 7, 2022). After careful review, the court concludes *Meuse* is factually distinguishable from this matter for two reasons. First, the *Meuse* plaintiff was actually denied a job by

9

constitutional claims are premature in a jurisdictional sense because Plaintiff has not yet suffered the harm that he alleges gives rise to his federal causes of action.

Turning to the prudential subcomponent, Plaintiff's framing of his constitutional right as the ability to be a "police officer without restriction" raises prudential concerns. Plaintiff is currently barred from serving without restriction because the Massachusetts P.O.S.T. Commission declined to certify him as qualified to be a police office. (Dkt. No. 48.) After confirmation by the full Commission, this decision is now subject to review by the Massachusetts state courts. In the state forum, a decision in Plaintiff's favor would eliminate his concerns with respect to serving without restriction. In contrast, a state court ruling upholding the P.O.S.T. Commission's decision would independently disqualify Plaintiff from serving as a police officer in the Commonwealth. The result of the process is uncertain but exercising judicial restraint may lead to "the dissipation of the legal dispute without need for decision." *Roman Cath. Bishop of Springfield*, 724 F.3d at 89. In response, Plaintiff correctly notes that Section 1983 claims are not restricted by any requirement of administrative exhaustion, *see Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180, 185 (2019), but by raising the ongoing certification process the court does not imply otherwise. Rather, the court considers the ongoing certification process indicative of the contingent and uncertain nature of Plaintiff's constitutional claims and injuries. *See City of Fall River, Mass. v. FERC,* 507 F.3d 1, 6 (1st Cir. 2007) (citing *Texas v. United States*, 523 U.S. 296, 300 (1998)). Specifically, until the certification process is complete, it is not possible for Plaintiff to

---

the Everett Fire Department which means he never was on the departmental payroll. *Id.* at *3. As discussed, Plaintiff remains on the Department's payroll. Second, the *Meuse* plaintiff's claim for reputational damages was directly tied to the harm he allegedly suffered through denial of employment with the Everett Fire Department. As Plaintiff remains formally on the Department payroll, his alleged reputational injury, premised on losing his job as a police officer, is contingent on future events. In so far as Plaintiff asserts reputational injury caused by other factors such as his criminal trial or the P.O.S.T. process, this injury is not fairly traceable to the constitutional harm alleged in his complaint. *See, e.g., California v. Texas,* 593 U.S. 659, 669 (2021) ("Neither the individual nor the state plaintiffs have shown that the injury they will suffer or have suffered is 'fairly traceable' to the 'allegedly unlawful conduct' of which they complain.").

adequately allege that he has been deprived of his right to serve as a police officer without restriction by these Defendants. After all, he remains on the Springfield Police payroll while an independent state-level licensing scheme prevents him from serving without restriction. As a matter of prudence, the court concludes Plaintiff's constitutional claims are not yet fit for judicial adjudication.

As to the hardship prong, Plaintiff cannot demonstrate a "direct and immediate dilemma" justifying this court's immediate adjudication of his constitutional claims. Here, Plaintiff continues to receive pay and benefits from the Springfield Police Department. This ability to collect pay and retain the benefits of employment is at the core of his alleged constitutionally protected interest. The operative complaint raises the specter of future harm in the form of removal from the police force if the P.O.S.T. Commission's decision to decertify Plaintiff is upheld by the Massachusetts courts, but this constitutional injury has not matured because this removal has not yet occurred. *See Doe v. Bush*, 323 F.3d 133, 138 (1st Cir. 2003) ("A third [rationale for the ripeness doctrine] is the recognition that, by waiting until a case is fully developed before deciding it, courts benefit from a focus sharpened by particular facts."). Moreover, dismissal on ripeness grounds is not a dismissal on the merits of Plaintiff's claims. *See, e.g., O'Connell v. Gross,* No. CV 19-11654-FDS, 2020 WL 1821832, at *5 n. 3 (D. Mass. Apr. 10, 2020). If his removal does come to pass, he may have an alleged constitutional injury with a concomitant ability to file an action under Section 1983 raising substantially similar allegations to the ones raised in his current complaint. In view of Plaintiff's continued presence on the Springfield Police payroll, his alleged constitutional injury is not ripe when reviewed under either prong of the ripeness test. Accordingly, Counts I and II are dismissed without prejudice.

Plaintiff's remaining claims, Counts III-VIII, all arise out of Massachusetts state law. "Given the absence of jurisdiction over the federal law claims, the court will decline to exercise supplemental jurisdiction over the state law claims." *Sexual Minorities Uganda v. Lively*, 254 F. Supp. 3d 262, 270-71 (D. Mass. 2017), *aff'd in part, appeal dismissed in part*, 899 F.3d 24 (1st Cir. 2018). Plaintiff's state claims

11

implicate novel and sensitive questions of state law. *See Lambert v. Fiorentini*, 949 F.3d 22, 29 (1st Cir. 2020) (noting it is appropriate to decline to exercise supplemental jurisdiction when the state law claims are "novel or sensitive."). Specifically, they implicate the sovereign prerogative of the Commonwealth of Massachusetts to regulate the profession of policing to ensure the requisite "high degree of judgment and discretion" necessary for a police officer to function in a free society. *Foley v. Connelie*, 435 U.S. 291, 297-300 (1978); *cf. Printz v. United States,* 521 U.S. 898, 921-22 (1997) (explaining the authority of the individual states to exercise control over local policing is an element of the "[r]esidual state sovereignty [that] was also implicit [in the federal constitution].").[7] Thus, "it [is] more prudent to allow a court of the Commonwealth of Massachusetts to take the lead." *Sexual Minorities Uganda*, 254 F. Supp. 3d at 271. Accordingly, Counts III-VIII are dismissed without prejudice. Similarly, the court declines to exercise supplemental jurisdiction over Defendants' Counterclaim II, as this counterclaim raises novel questions of state law with respect to the fiduciary duties owed by police officers to the municipalities in which they work. *See, e.g., Broderick v. Talbot*, No. CIV.A. 09-11511-DJC, 2012 WL 4321355, at *9 (D. Mass. Sept. 20, 2012); *Shen v. Biogen Idec Inc.*, 523 F. Supp. 2d 48, 57 (D. Mass. 2007). As no claims or counterclaims remain before the court, this action is dismissed in its entirety without prejudice.

## V. CONCLUSION

For the reasons set forth above, the court concludes it lacks subject matter jurisdiction over Plaintiff's federal claims and therefore dismisses those claims without prejudice in accordance with Federal Rule of Civil Procedure 12(h)(3). The court also declines to exercise supplemental jurisdiction

---

[7] As but one example, Plaintiff's defamation claim asserts Superintendent Clapprood's statements to the P.O.S.T. Commission were defamatory. (Dkt. No. 1, ¶ 159-61.) However, as discussed, she was required to provide these statements to the Commission by state regulation. This raises immediate questions of privilege. These questions, arising out of new state regulatory scheme, are best addressed in the first instance by state courts. *Cf. Arizonans for Off. Eng. v. Arizona,* 520 U.S. 43, 79 (1997) (warning federal courts against unnecessary speculation on unsettled questions of state law).

over the remaining state-law claims and therefore dismisses those claims without prejudice as well. Consequently, Plaintiff's motion to dismiss for failure to state a claim (Dkt. No. 19), Plaintiff's motion for sanctions (Dkt. No. 23), and Defendants' motion to dismiss for failure to state a claim (Dkt. No. 21) are DENIED without prejudice.

    It is So Ordered.

                                                                                  /s/ Mark G. Mastroianni
                                                                                 MARK G. MASTROIANNI
                                                                                  United States District Judge